IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-00218-NYW

A.K.G.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by Plaintiff A.K.G. ("Plaintiff"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED**.

## BACKGROUND

Plaintiff initially applied to the Social Security Administration ("SSA") for DIB in 2015, alleging that she became disabled on September 6, 2013. [Doc. 7-5 at 566–67].[2] An administrative law judge ("ALJ") denied Plaintiff's claim on February 20, 2018. [Doc.

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b).

[2] When citing to the Administrative Record, the Court utilizes the docket number assigned by the Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the Court cites to the document and page number generated by the CM/ECF system.

1

7-2 at 15–28]. After Plaintiff challenged the denial of benefits in the United States District Court for the District of Colorado ("this District"), the district court granted a motion to remand Plaintiff's case for further proceedings on April 30, 2019, and the Appeals Council remanded to a different ALJ. [Doc. 7-10 at 1951–52].

*The September 2022 Hearing.* After remand, at a telephonic hearing on September 22, 2022, the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). [Doc. 7-9 at 1904–43]. The ALJ invited Plaintiff to supplement her testimony from the first hearing, and Plaintiff testified about the various stressful triggers in her life. [*Id.* at 1929–30]. Plaintiff continued to discuss how those triggers, along with other factors, resulted in a noticeable decline in her cognitive abilities. [*Id.* at 1930–32].

The ALJ then took the testimony of the VE. The VE evaluated Plaintiff's past employment as an employment services supervisor and an employment and claims aide as light work and medium work, respectively. [*Id.* at 1936]. Next, the ALJ posed a hypothetical to the VE, postulating an individual of Plaintiff's age on her date last insured (45 years old), with a similar background, who could perform light work; could occasionally balance; could occasionally stoop, kneel, crouch, and crawl; could frequently handle, finger, and feel bilaterally; could overhead reach on the right side no more than occasionally; could not have any exposure to extreme cold, excessive vibration, or moving mechanical parts or unprotected heights; could understand, remember, and carryout simple instructions; could make simple work-related decisions; could handle occasional changes in routine work setting; and could occasionally interact with coworkers, supervisors, and the public. [*Id.* at 1937]. The VE testified that such a person would be unable to perform Plaintiff's prior work but could still engage in other "light work"

that existed in great numbers in the national economy, including the positions of merchandise marker, mailroom clerk, and package sorter, consistent with the Dictionary of Occupational Titles ("DOT"). [*Id.* at 1937–38]. The ALJ then posed a more restrictive hypothetical—an individual who is limited to a sedentary exertional level—to which the VE responded, relying on the DOT as well as her professional knowledge, that the hypothetical individual would be able to work as a document preparer, circuit board assembler, addressing clerk, or final assembler. [*Id.* at 1938–39]. Lastly, the ALJ asked the VE whether her testimony was consistent with the DOT. [*Id.* at 1941]. The VE responded that her testimony was consistent with the DOT, with a few exceptions—including the "reduced employment numbers for the social interactions," the DOT's lack of distinction between "supervisor, public, or coworker contact," and the DOT's lack of information on "reaching" activities and "off task and absenteeism tolerances." [*Id.*]. The VE explained that the inconsistencies she mentioned between her testimony and the DOT could be supplemented by her professional knowledge about the suggested occupations and by industry standards. Through additional questioning, the ALJ confirmed that the VE's testimony was not a "strict read of the DOT" but was also supported by her prior experiences. [*Id.*].

      **The Hearing Decision.** On October 5, 2022, the ALJ issued his decision, finding that Plaintiff was not disabled on or before the date last insured and was thus not entitled to DIB. [*Id.* at 1871, 1891]. The ALJ began by finding that Plaintiff's date last insured was December 31, 2018, thus narrowing his review to the period between the alleged disability onset date of September 6, 2013 and the date last insured. *See* [*id.* at 1877]. The ALJ next found that Plaintiff did not engage in substantial gainful activity during the

3

period in question and had the following severe impairments: lumbar spine degenerative disc disease, residuals at C5–7 following anterior cervical discectomy and fusion, major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder, chronic pain syndrome, opioid dependence, bilateral minimal knee changes, residuals from lumbar spine fusion, headache, insomnia, gastroesophageal reflux disease, right shoulder degeneration, thoracic spine degenerative disc disease, and fibromyalgia. [*Id.*].

The ALJ then determined Plaintiff's residual functional capacity ("RFC")—in other words, her remaining ability to engage in work after accounting for all severe and non-severe conditions:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except no ladders, ropes, or scaffolds; no more than occasional balancing as that term is defined in the Selected Characteristics of Occupations (SCO); no more than occasional in terms of stooping, climbing ramps and stairs, kneel, crouch, and crawl; frequent handling, fingering, and feeling bilaterally; overhead reaching on the right side should be no more than occasional; no exposure to extreme cold; no exposure to excessive vibration; and no moving mechanical parts/unprotected heights. [Plaintiff] can understand/ remember/carry out simple instructions; can use judgment to make simple work-related decisions; can handle up to occasional changes in a routine work setting; and can have no more than occasional interaction with coworkers, supervisors; but no public interaction.

[*Id*. at 1878–79]. The ALJ explained that, in making that RFC finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [*Id.* at 1879]. To that end, the ALJ discussed at length why certain non-severe impairments alleged by Plaintiff did not affect the RFC and why some medical evaluations received more weight than others in his analysis. *See* [*id.* at 1879–88]. Relying on the VE's testimony at the second hearing, and applying the specified RFC, the ALJ then found that Plaintiff was unable to

perform her past relevant work as an employment services supervisor and employment and claims aide, but that Plaintiff could nonetheless perform other jobs that existed in significant numbers in the national economy—such as the positions of merchandize marker, mail room clerk, and package sorter. [*Id.* at 1888–90]. The ALJ therefore concluded that Plaintiff was not disabled. [*Id.* at 1890].

***Judicial Review.*** Plaintiff proceeded with filing a Complaint and Petition for Review directly to this District on January 5, 2023, invoking this Court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* [Doc. 1]. Because this matter is ripe for resolution, the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if they are insured, have not attained retirement age, have filed an application for DIB, and have a disability as defined in the Act. *See* 42 U.S.C. § 423(a)(1). The disability claimant must prove that they were disabled prior to the date last insured. *See Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). Under the Act, an individual is disabled only if

> [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A). The disability must last or be expected to last for at least 12 months. *Id.* § 423(d)(1)(A). When a claimant has one or more physical or mental

5

impairments, the Commissioner must consider their combined effects in making a disability determination. *Id.* § 423(d)(2)(B).

The Regulations set out a five-step evaluation process to determine whether a claimant is disabled, based on assessing:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," and the Commissioner bears the burden of proof at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). If an ALJ determines "at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's decision, the Court limits its review to considering whether the ALJ supported his findings by substantial evidence and applied the correct legal standards. *See Flaherty*, 515 F.3d at 1070. "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as

6

adequate to support a conclusion." *Id.* (quotation omitted). Evidence is not substantial if it is overwhelmed by the record or is only a conclusion. *Williams*, 844 F.2d at 750. The Court may not replace the Commissioner's decision between two plausible and conflicting views, even if the Court would find differently in conducting de novo review, *Lax*, 489 F.3d at 1084, and the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). However, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

## ANALYSIS

Plaintiff identifies three issues with the ALJ's decision which she argues warrant remand. *See* [Doc. 8 at 3–4]. First, she argues that the ALJ failed to resolve a vocational conflict in that Plaintiff is unable to perform the jobs upon which the ALJ's decision relies. [*Id.* at 4]. Second, she contends that the ALJ failed to "accept and include or reject and explain why" he was not including limitations offered by a treating medical source. [*Id.* at 11]. Lastly, Plaintiff argues that the ALJ failed to sufficiently analyze Plaintiff's subjective complaints about her symptoms. [*Id.* at 15]. The Commissioner disagrees, asserting that the ALJ properly found that there was no vocational conflict, adequately analyzed the treating medical source's opinion, and properly considered Plaintiff's subjective complaints. *See generally* [Doc. 11 at 4–13]. Because this Court finds Plaintiff's first argument dispositive, the Court's analysis is limited to that first argument.

7

I.       **Vocational Conflict**

     A.       **Legal Framework**

At step five of the sequential evaluation process, if the ALJ finds that the claimant is unable to perform her past relevant work, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the claimant can do work that exists in significant numbers in the national economy, she is not disabled. *Id.* § 404.1520(a)(4)(v). If the claimant is not able to perform other work that exists in significant numbers in the national economy, she is disabled. *Id.* The Commissioner has the burden of producing evidence that the claimant can perform other work that exists in significant numbers in the national economy. *See id.* § 404.1560(c)(1); *see also Williams*, 844 F.2d at 760.

For guidance on making a disability determination, an ALJ will often seek testimony from a VE regarding the types of jobs the claimant can perform with their limitations and the number of such jobs that exist in the national economy. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Those experts are contracted with the SSA "to provide impartial testimony in agency proceedings." *Id.* They are required to have a certain level of "expertise" and "current knowledge" of a wide variety of jobs in the national economy as well as the implications of placing "adult workers with disabilities into [those] jobs." *Id.* (quotation omitted). During the hearing, a VE is typically asked a series of hypothetical questions to help the ALJ make the step-five determination. *See Rivera v. Berryhill*, 242 F.Supp.3d 1226, 1237 (D.N.M. 2017). The hypotheticals raised must reflect the impairments and limitations that are in the evidentiary record of claimant's case. *Id.* The VE's response to these hypotheticals is considered "substantial evidence for an ALJ's disability decision." *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000)).

However, the ALJ is required to "ask the expert how his or her testimony . . . corresponds with the Dictionary of Occupational Titles and elicit a reasonable explanation for any discrepancy." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999). Social Security Ruling ("SSR") 00-4p, which codifies the *Haddock* ruling, requires the ALJ "to fully develop the record" as to whether there is an inconsistency relating to any occupational information. SSR 00-4p, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000); *see also Flaherty*, 515 F.3d at 1071 ("Disability hearings are nonadversarial," and "the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." (quotation omitted)). In other words, an ALJ must ensure an adequate record is developed that is "consistent with the issues raised." *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009). Under SSR 00-4p, the ALJ's duty to fully develop the record requires the adjudicator to inquire, "on the record, as to whether or not there is such consistency [between the VE's testimony and the DOT]." SSR 00-4p, 2000 WL 1898704, at *2. In weighing the conflicting evidence, there is no hierarchy in value of the information presented by the VE's testimony or the DOT. *Id.*

The ALJ's duty is not limited to inquiry of the VE at the hearing; the ALJ must also verify the VE's testimony. *Haddock*, 196 F.3d at 1089. The ALJ satisfies this duty if they identify and resolve any "apparent conflicts" between the DOT and the VE's testimony. *Chatmon v. Kijakazi*, No. 5:23-cv-00291-SM, 2023 WL 5395942, at *3 (W.D. Okla. Aug. 22, 2023). Even if the VE claims that their testimony at the hearing is consistent with the DOT, the ALJ still has a duty to "*independently* identify and resolve any apparent conflicts." *Id*. (emphasis added). Under Tenth Circuit case law, the ALJ "must correlate

9

a VE's testimony in an individual case with vocational information provided in the [DOT] or other reliable publications." *Haddock*, 196 F.3d at 1089.

### B.  Discussion

As mentioned above, Plaintiff argues that the ALJ failed to reconcile an apparent conflict between the VE's testimony and the DOT. [Doc. 8 at 4]. Based on the ALJ's RFC determination, Plaintiff asserts that there is an inconsistency between the required reasoning levels for the adopted occupations and the Plaintiff's limitations. [*Id*. at 4–11].

An apparent conflict between the VE's testimony and the DOT can arise when there is an inconsistency between the ALJ's RFC findings and the reasoning level of the adopted occupations. The reasoning abilities required for a job are articulated by the DOT's Scale of General Education Development ("GED"). DOT App'x C, § III. The GED describes various requirements in maintaining satisfactory job performance, including reasoning development, mathematical development, and language development. *Id.*; *see also Cabrera v. Colvin*, No. 12-cv-01559-PAB, 2015 WL 1433245, at *10 (D. Colo. Mar. 26, 2015) (stating that the GED level describes "the complexity of a job." (quotation omitted)). The GED addresses six areas of reasoning development. *See* DOT App'x C, § III. Relevant here, the GED defines reasoning levels three through one as follows:

> LEVEL 3[:]  Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.
>
> LEVEL 2[:]  Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1[:]  Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

10

*Id.*

Plaintiff argues that the ALJ failed to resolve an apparent vocational conflict between the VE's testimony and the DOT. Relevant here, at the hearing, the VE testified that a person with Plaintiff's characteristics and RFC could perform work as a mail room clerk, a merchandise sorter, or a package sorter. [Doc. 7-9 at 1938]. The ALJ asked the VE if her testimony was consistent with the DOT, and the VE confirmed that it was. [*Id.* at 1941]. Then, in his decision, the ALJ found that the VE's testimony was consistent with the DOT and her professional vocational knowledge. [*Id.* at 1890]. The ALJ thus "accept[ed] the vocational expert's testimony as objective and professionally reliable." [*Id.*]. The ALJ concluded that, considering Plaintiff's relevant circumstances, and based on the VE's testimony, Plaintiff can make a "successful adjustment to other work that exist[s] in significant numbers in the national economy." [*Id.*]. Specifically, the ALJ found that Plaintiff could perform work in the national economy, specifically the three jobs identified by the VE at the hearing: merchandise marker (DOT § 209.587-034); mail room clerk (DOT § 209.687-026); and package sorter (DOT § 222.687-022). [*Id.* at 1880, 1889–90]. Under the DOT, the mail room clerk position requires a reasoning level of three, while the remaining occupations require a reasoning level of two. *See* DOT § 209.587-034; DOT § 209.587-034; DOT § 222.687-022.

Plaintiff contends that the ALJ's determination that she could perform work in the national economy conflicts with the ALJ's RFC determination because the reasoning level for each of the occupations cited by the ALJ requires the ability to "carry out at least detailed instructions." [Doc. 8 at 6–7 (emphasis omitted)]. Given that the ALJ's RFC limited Plaintiff to "simple instructions" and making "simple work-related decisions," *see*

11

[Doc. 7-9 at 1879], Plaintiff argues that an apparent conflict exists between the VE's testimony and the DOT with respect to the limitations adopted by the ALJ, *see* [Doc. 8 at 8]. As a result, Plaintiff argues that she is unable to perform the work upon which the ALJ's determination of non-disability relies.

In response, the Commissioner argues that there was no conflict between the DOT and the VE's testimony. [Doc. 11 at 4]. The Commissioner notes that the DOT defines level two reasoning as the ability "to carry out detailed but uninvolved instructions," and asserts that the term "uninvolved" is the "key qualifier." [*Id.* at 5]. Furthermore, the Commissioner contends that the VE testified at the hearing that there was no conflict by stating that a simple work limitation "would not necessarily preclude the ability to carry out detailed written and oral instructions." [*Id.* at 7 (quoting Doc. 7-9 at 1940)]. In the alternative, the Commissioner argues that if the Court finds that there was a conflict between the Plaintiff's limitation to simple work and the jobs requiring level two reasoning, Plaintiff's argument would still fail because the conflict was not apparent to the ALJ, because the VE testified there was no conflict and neither Plaintiff nor her counsel challenged this at the hearing. [*Id.* at 6].

The Court respectfully agrees with Plaintiff. An apparent conflict typically exists when there is a vocational inconsistency between the VE's testimony and the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *3. Turning first to the ALJ's conclusion that Plaintiff could work as a mail room clerk, which requires level-three reasoning, the Tenth Circuit has held that a simple-instructions limitation is inconsistent with jobs requiring level-three reasoning. *See Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (citing *Lucy v.*

*Chater*, 113 F.3d 905, 909 (8th Cir. 1997)).  As a result, given the ALJ's RFC finding that Plaintiff is limited to simple instructions, there is an inconsistency in the ALJ's decision.

Turning to the ALJ's statement that Plaintiff could work two jobs requiring level-two reasoning—package sorter or merchandise marker—the Tenth Circuit has not affirmatively spoken as to whether a limitation to simple instructions is consistent with jobs requiring level-two reasoning.  See *Paulek*, 662 F. App'x at 594.  However, a number of courts, including this Court, have held that a simple-instruction limitation is inconsistent with jobs requiring level-two reasoning.  See *M.D. v. Kijakazi*, No. 21-cv-01963-NYW, 2022 WL 3227621, *13–14 (D. Colo. Aug. 10, 2022) (this Court holding that, based on the plain language of the GED reasoning levels, a simple instruction limitation is more consistent with level-one reasoning); *Deveraeaux v. Astrue*, No. 12-cv-01168-WJM, 2013 WL 2393075, at *8–9 (D. Colo. May 31, 2013) (stating that the case must be remanded because the ALJ failed to reconcile the inconsistency between a simple instruction limitation and level-two reasoning); *see also Long v. Kijakazi*, No. 5:20-cv-00658-SM, 2021 WL 3826478, at *3 (W.D. Okla. Aug. 26, 2021).

In the RFC determination, the ALJ concluded that Plaintiff can "understand, remember, [and] carry out *simple instructions*."  [Doc. 7-19 at 1879 (emphasis added)]. The GED explicitly states that level-one reasoning only requires an individual to "apply commonsense understanding to carryout *simple one- or two-step instructions*."  DOT App'x C, § III (emphasis added).  On the contrary, level-two reasoning jobs require an employee "to carry out *detailed* but uninvolved . . . instructions."  *Id.*  (emphasis added). While the Court does not hold that a limitation to simple instructions is always incompatible with all jobs requiring level-two reasoning, there appears to be a conflict

13

between the VE's testimony and the DOT.  *See M.D.*, 2022 WL 3227621 at *13–14; *Deveraeaux*, 2013 WL 2393075, at *8.

Before this Court, Defendant appears to erroneously conflate a limitation to "simple work tasks" and a limitation to "simple instructions."  *See* [Doc. 11 at 5–6].  Although both limitations were assigned to Plaintiff, both fall within Plaintiff's limitations, courts have "generally drawn a distinction between simple tasks and simple instructions when determining whether an RFC containing such limitations conflicts with level two reasoning."  *Chatmon*, 2023 WL 5395942, at *3.  "Although a limitation to simple tasks is consistent with a reasoning level of two, that is not the case for a limitation to simple instructions."  *Calvin v. Kijakazi*, No. CIV-21-1046-SM, 2022 WL 3268745, at *4 (W.D. Okla. Aug. 10, 2022) (citing *C.H.C. v. Commissioner*, 20-cv-02428-KLM, 2022 WL 950433, at *7 (D. Colo. March 29, 2022)).

The Commissioner also argues that if there were a conflict, it was not apparent because the VE testified that there was no conflict and Plaintiff did not challenge that testimony at the hearing.  [Doc. 11 at 6].  In support, the Commissioner cites to *Gibbons*, an unpublished Tenth Circuit case, for the proposition that the ALJ has no duty to further investigate when a VE states they that relied on the DOT.  [*Id.* (citing *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003)].  However, the Tenth Circuit later held that remand was warranted where an ALJ failed to address an apparent conflict between the VE's testimony and the DOT, even where the issue was not raised at the hearing.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).  This Court is bound to follow the published decision in *Hackett* over the unpublished *Gibbons* decision.   *See* 10th Cir. R.

14

32.1 ("Unpublished decisions are not precedential but may be cited for their persuasive value.").

At step five, Commissioner has the burden to produce evidence that Plaintiff can perform other work in the national economy, *Williams*, 844 F.2d at 760, and the ALJ's conclusion as to whether Plaintiff could perform a significant number of jobs in the national economy must be supported by substantial evidence, 20 C.F.R. 404.1520(g); *Haddock*, 196 F.3d at 1088; *Flaherty*, 515 F.3d at 1070. And as explained above, the ALJ has a duty to independently identify and resolve any apparent conflicts between the VE's testimony and the DOT. *Chatmon*, 2023 WL 5395942, at *3. As explained in *Haddock*, the ALJ must ensure that the VE's testimony correlates with reliable vocational information. *Haddock*, 196 F.3d at 1089. The failure to explain or reconcile the apparent discrepancy between a limitation to simple instructions and jobs requiring reasoning level two constitutes as a reversible error. *See C.H.C.*, 2022 WL 950433, at *8.

In this case, the ALJ did not discuss the apparent conflict or reconcile that conflict in his decision; instead, he explicitly stated that the VE's testimony was "consistent with the information contained in the [DOT]." [Doc. 7-9 at 1890]; *see also Chatmon*, 2023 WL 5395942 at *3 (stating that even if a VE states that their testimony is consistent with the DOT, "the ALJ must *independently* identify and resolve any apparent conflicts before relying on the expert's testimony) (emphasis added). Furthermore, it is notable that each of the three jobs identified by the ALJ appears to be subject to this unresolved conflict; if each of the three positions identified by the ALJ are subject to a potential conflict, the Court cannot conclude that the ALJ's step-five determination is supported by substantial evidence. Remand, with instructions for the ALJ to explain the apparent discrepancy

15

between the VE's testimony and the DOT, is appropriate.  *C.H.C.*, 2022 WL 950433, at *8; *Justin v. Kijakazi*, No. 21-cv-00347-SH, 2022 WL 4096878, at *4 (N.D. Okla. Sept. 7, 2022); *see also Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) ("[T]he issue of numerical significance [of jobs in the national economy] entails many fact-specific considerations requiring individualized evaluation, and . . . should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." (quotation omitted)); *Chavez v. Barnhart*, 126 F. App'x  434, 436 (10th Cir. 2005) (holding that claimant's case, where the Tenth Circuit concluded claimant could not perform one of the adopted occupations, must be remanded to give the ALJ the opportunity to determine whether the remaining occupation exist in significant numbers for purposes of step five).

## II.   Remaining Issues

Plaintiff raises additional arguments pertaining to the sufficiency of the underlying administrative proceedings.  [Doc. 8 at 11–19].  Because remand is warranted based on the ALJ's address the inconsistency in his ruling, the Court declines to address Plaintiff's remaining arguments.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) ("The ALJ's failure to develop the record affected the disability analysis as a whole and we therefore do not address the other issues Mr. Madrid raises on appeal.").  However, on remand, the ALJ is directed to consider the remaining issues raised in Plaintiff's briefing and to modify his decision, if appropriate.  *See Allen*, 357 F.3d at 1144; *see also Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.").

## CONCLUSION

The Court respectfully **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further proceedings consistent with this Memorandum Opinion and Order.

DATED:  December 8, 2023                                   BY THE COURT:

                                                                                  _____
                                                                                  Nina Y. Wang
                                                                                  United States District Judge